Good morning, your honors. May it please the court, Michelle Barth on behalf of Mr. Raymond White, the appellate. I'd like to begin our discussion today by talking a little bit about the case of Amoteo, which was decided yesterday, which has had has impact on the aggravated identity theft claim raised in our appeal. What Amoteo makes clear are the points made by the Supreme Court in Dubin, that the use of another's identity must be at the crux of the fraud in order to qualify as aggravated identity theft. That use must be a key mover and crucial to the scheme, whatever that scheme may be. And here I think it's important that we look at the nature of the fraud, because how do we get to the heart of it if we don't understand the fraudulent scheme? So when we look at the fraudulent scheme, it's pretty straightforward. Mr. White provided false information about his experience, his company's finances, and his business. As a result of this false information, as charged by the government, he was able to obtain the government contract, he was able to obtain the SBA guarantee, and he was also able to obtain payments. And I understand, you know, looking at the colloquy during the plea, when he was put to plea on the count four, the aggravated identity theft, the court asked him whether he was agreeing to both theories of liability, the attorney letter and the Social Security. If he had admitted to the Social Security, the use of someone's real Social Security number, not his own, and not his name because he had been barred, and he had a prior conviction for pretty much similar conduct. I could see how that would fall, you know, being the crux of the offense of aggravated identity theft, based on the Supreme Court case. I see this case, and perhaps this is a better question for your opponents, but I'd like your take on this. I see this case as being maybe a little closer to the Shepard case, the Florida case, than this court's case in Avenatti, where the whole purpose of using the client's name in Avenatti was so that the attorney who was prosecuted there could obtain funds from the literary agent directly. So that was the crux of the offense there. This seems to me a little bit closer to Shepard, and I'll have questions for the government why they didn't stop the change of plea and insist on whether they were pursuing or not the aggravated identity theft based on the use of the Social Security number, which would have been, in my view, a lot closer to Dubin. That didn't happen. So it appears we have a conviction for aggravated identity theft just on the use of the attorney's name to try to get the funds directly sent to him. What's your take on the application of Avenatti to this case? Similar to your honor, in Avenatti, that signature was important because that is how you were going to obtain those funds directly. He had to sign the client's signature in order to obtain funds. There was no way around it. It was at the heart. Was it the attorney, the forged attorney letter here used in connection with getting payment? No, your honor. I thought it was over a dispute under the contract over getting funds. No? Well, why don't you tell us? Sure. So Mr. White received three payments. Three payments had zero connection to the attorney letter. The attorney letter didn't even exist at the time. Tell us what the attorney letter was used for then. Why? Sure. There was a disagreement. Well, I want to point out before I do that that that's not part of the record at the time of the guilty plea. There were no facts proffered by the government about the importance of the attorney letter or how it might be used in the furtherance of the conspiracy. So the facts that I'm going to share with you are not part of the record. That was before the district court. So there was a... It still goes to whether it was plain error though, right? You mean in the sense whether or not his... It was before the district court or not. It had to have made a difference if you're going to tell us something different. Yes, I agree with that point, your honor. But the attorney letter was about a disagreement about a third party overseeing payments. There was a letter that was written to a broker and in the letter it set forth a legal argument about why payments did not need to go into an escrow account prior to being dispersed. That's it. So the attorney letter, even if it had some impact on payments going forward, which is not a point that I concede, but even if it had some impact on payments going forward, it wouldn't have stopped payments altogether. It just meant that the money would go one place before it went to another. So I guess this then depends on how narrowly we define what the crux of the fraud is. But I mean, it sounds to me like forging letters to get money to go one direction instead of another. Sounds like the crux of the fraud to me. Well, I guess I disagree with that point. I think we've got some pretty clear guidelines by both Dubin and Amateo about what it means to be at the crux of the fraud. The attorney letter didn't have anything to do with getting that government contract to begin with. Getting the government, I mean, so this is what I'm saying. You're defining the fraud as the crux of the fraud narrowly as just beginning the procurement, getting the contract. But why would it not, it wasn't complete then. There's still money that needs to be obtained from that. Of course, Judge. But we also have to keep in mind that this is a performance based contract. No money was going to be dispersed, period, unless Mr. White substantially performed some aspect of the contract. So that letter did not create performance of some aspect of the contract. And even if it went into one pot first before it went to Mr. White, it was still headed towards Mr. White. So that letter just represented a legal opinion about why that money shouldn't go into one pot first before it went to Mr. White. That's it. So when we have substantial performance as a requirement of a contract, the ongoing part of the fraud required his substantial performance in order to receive a payment. So in your view, the letter would have to go to the procurement process itself, like a direct forgery or a direct misrepresentation to the government. Or if somehow the attorney letter was an invoice of some sort or fraudulently asking for money for some aspect of the project that hadn't been performed. There are other ways in which we could probably get to aggravated identity theft by use of an attorney letter in general. But we don't have those facts before us. So- Do you need to show us here though that but for the district court's error in accepting this plea, he would not have entered the plea? No, no, that's a much higher standard than what's required. What's required here is only that there was a reasonable possibility that Mr. White would not have entered his guilty plea. Because the record at the time of his sentencing was more robust than at the time of entering the plea. What we do want, we do want to look at what facts the district court elicited at the time of plea. And what we do have is a very strong statement from Mr. White, as pointed out by Judge Kahn earlier, that he flatly denied the other means that the government alleges meets the standard of aggravated identity theft. I mean, to be clear, the court gave him a sentence of 60 months. Even if you took away the aggravated identity theft, his range was 57 to 71. For somebody who had committed fraud, pretending to be a disabled veteran and obtaining fraud convicted of that, and was barred from government contracting, which is why he used somebody else's identity to create this fake company to get all this money. Do you agree, however, that had he pled to the use of the social security number that obviously was used to get this contract in bid in the first place under a false identity, that that would fit the definition of the crux of the fraud under Dubin? If you're, we're assuming that he actually did use a false identity and that was important to the decision making process, then yes. I think he stipulated to using a false identity to get this contract. I think he stipulated to enough facts. I agree that he denied that he was admitting guilt for aggravated identity theft based on that conduct and only on the attorney letter. But that's a far cry from saying he didn't admit sufficient facts about the overall fraud he engaged in in this case. He's not challenging the overall fraud. So the first thing, if that wasn't clear. Wasn't that overall fraud, in essence, based on the use of a false identity to get this contract in the first place? I think it was a combination of things. I don't, because Mr. White did not admit to using another social security number. I'm going off of the record that the district court had to have used at the time, which was he falsified his experience. He falsified the health of his company's financials. He falsified his resume. So those are the things that the Coast Guard used in determining whether or not he was a right fit for the project and qualified to do it. I thought he admitted to more than that, but the record will speak for itself. So I do, the guilty plea itself, it is set forth, the relevant parts are set forth in block form in the reply brief. So you can look directly at that and see that it's a very, very brief colloquy about that attorney letter and what he admits to regarding that. Thank you, counsel. Thank you. Good morning, your honors. May it please the court, Olga Zverevich for the United States. The judgment below should be affirmed. With respect to White's challenge to account for the aggravated identity theft count, the district court did not plainly err in determining that there was a factual basis for White's plea. White's arguments to the country rest on an overly narrow view of what the fraud was here. To Judge Park's point, the fraud here and its purpose was to obtain money from the National Guard to which White was not entitled. That was his point. Step one in that- As I understand your friend's argument, it's that the crux of the fraud, which is the language from Dubin, is the fraudulently obtaining the contract. And the subsequent mechanics of some of the money flow, whether it goes into escrow or not, are sort of subsidiary issues. Is that? That's the argument, your honor, and that argument is plainly meritless. The contract was definitely step one in the fraud. He had to get the contract. What's meritless about it, though? What's wrong with that argument? What's wrong, your honor, is that White's ultimate purpose was to actually extract money from the National Guard. As this court said in Ruti Gliano- Now, you're defining crux, it seems to me, quite broadly. That anything having to do with money that flows from that contract is the crux of the fraud. No, your honor. My point is only that the fraud here was to fraudulently procure this particular contract, and then to actually get payment under that particular contract. And here, one of the ways in which White got that payment was by impersonating an attorney, forging his signature to a letter that White drafted, and submitting that forged letter to the victim in order to procure payment under the fraudulently induced contract. Was it to- If I could, I'm sorry, thank you. When you say impersonating an attorney, you're just talking about his using the attorney's signature on the letter, right? He didn't show up any place and pretend to be an attorney. Correct, your honor. What I mean is that he drafted a letter purporting to be from an attorney who served as Vice President at his company, and then forged his signature. Yeah, so I was troubled at the brevity of the discussion of the basis for the aggravated identity theft charge in the plea hearing. Because to me, it was four lines long. He said, I'm kind of for, your honor, I'm admitting to the aggravated identity theft and using the lawyer's signature. But I have no idea what the government is talking about as far as a social security number of an unknown individual. That's it, that's all I have to say. And then that was it, that's all he admitted to at the plea hearing. So I'm troubled by looking at the social security number, and I'm troubled by no discussion about what the letter was about, what this was, how this was a basis for imposing an additional two years mandatory on him, just based on these facts. Don't you, we have different views based on the case law. There's a little difference of opinion about whether we can look at the facts that are created in the record after the plea. But as a basis for the entry of a judgment on 1028A here, don't you admit that this is sketchy and it's really only the lawyer's signature that was at issue? Your Honor, we do agree that the allocution at the plea was rather sparse. However, the law is clear, crystal clear, there is no dispute that this court can consider the entirety of the record, including the PSR, in assessing whether White has established prejudice under the plain error analysis. There is no question about that. On plain error, you think we can go further? Yes, Your Honor, and here what's important is that the facts in the pre-sentence report, which provide an ample basis for the aggravated identity theft charge, were undisputed by White. He did not challenge any of those facts. And those facts show that he used that forged letter in order, again, to fraudulently procure payments from his victim. Was it to fraudulently procure the payments? He had already won the award for the bid. So as I understood it, what he was upset about is that they had set up an escrow account as to the SBA funds. And any money that was to be paid to subcontractors would go into that escrow account. And he wanted the money to go directly to him, so he could presumably pay those subcontractors. So he had already obtained a commitment for that money. So the letter was used simply to facilitate that money going directly to him, instead of to the escrow account, which seems to be the type of ancillary conduct that the Supreme Court in Dubin was concerned about being used as a basis for aggravated identity theft. And I understand your argument on harmless. But is the government claiming, to be clear, and I appreciate that I did not read your brief to claim that the basis for the aggravated identity theft conviction, or plea, was anything other than the attorney letter? Or are you claiming otherwise? Your Honor, with respect to the latter point, and I'll address the former point. With respect to the latter point, our argument is that the fraudulent use of the social security number is absolutely relevant to assessing, again, prejudice under the plain error standard. Okay. Because while White denied knowing anything about a social security number at the time of the plea, by the time of the sentencing, he admitted the statements in the pre-sentence report that he fraudulently used another person's social security number in making the guarantee submissions to the SBA. I mean, it's unfortunate, I get it. The plea was February 21st, Dubin was argued February 27th, not decided until June 23rd, I get that. Hindsight is 20-20. It's unfortunate, I noticed that the AUSA, presumably that was, no, I don't believe that was you, tried to stop the court and say, but your honor. And the court said, I think he's admitted to aggravated felony, let's move on. And the AUSA said, well, we'll use it as an aggravating factor at sentencing. That's unfortunate, but that's the record we have. He did not plead guilty to, so then when we're looking at whether that conviction stands up in light of Dubin, because of how the sentence was structured and that he did receive the 24 months added to his sentence. Now, it looks like the court gave him a huge break on the others, probably considering that mandatory 24 month consecutive. I understand all that. But we still have to decide whether this is more like Dubin and Avenanti, or it's more like Shepard and Ancillary. And that's where I think I'm struggling. If you could help me figure out how the attorney letter went to the crux of his crime. Social security number, using a fake ID, not his true real name. All that I get. Yes, your honor. So, I think your honor made two points, both of which I want to address. So first, just to close the loop on the social security issue. The fact that White did not dispute any of the detailed statements in the pre-sentence report with respect to his fraudulent use of the social security number shows that there is no reasonable probability that he would have proceeded to trial but for this rule 11 error at the police. That's with respect to that. With respect to the fraudulent attorney letter, your honor is correct that the dispute had to do with the use of the escrow account. But the use of the escrow account was an integral piece of the scheme here. Because the SBA, and this is in the sworn complaint, which is at docket one. The SBA required White to enter into an escrow agreement and to forward all payments that he had received from the National Guard into that escrow agreement. And the money in that escrow agreement would be used, as your honor said, to pay subcontractors. So am I right in understanding that actually the contract award could have been revoked had he not been able to get the SBA approval? Absolutely, your honor. Yeah, so the ultimate award of the contract was contingent upon him satisfying this condition, right? Correct, your honor. He was required to get insurance, and then the insurance company required a guarantee from the SBA before doing that. So absolutely, it was a requirement. So the whole thing hung in the balance still. Exactly, your honor. And so that was a crucial requirement of this contract. White, in fact, and this is also in the complaint, entered into that escrow agreement. However, when he began receiving reimbursement payments from the National Guard, he failed to send them into escrow as required. That was the nature of the dispute. The escrow agent said, wait a minute, there is a contract, we are supposed to be getting the payments. And then in order to continue fraudulently, personally receiving the payments rather than having them go into escrow, White forged the attorney letter. He impersonated the lawyer, signed his name, submitted that letter, including to the National Guard, who became involved. In order to persuade his victim to continue fraudulently making payments to White himself, he didn't want them going into escrow so that his subcontractors get paid. He wanted the money from the fraud contract himself. When you're saying his victim, you're meaning the DC Army National Guard, right? Correct, your honor. Yeah, so the government. Yes. Yeah. Exactly. And so it is clear that the impersonation of the lawyer, drafting a letter containing legal arguments saying why this escrow agreement was void, went directly to the crux of the fraud here. It was White's very purpose in engaging in the scheme to extract money from the National Guard. And when it looked like that was failing, because now there's somebody saying, no, no, no, no, no, the money should go into escrow, he came up with the forgery. He impersonated a lawyer. That is poor, aggravated identity theft, your honor. Thank you, counsel. We'll hear from her. So I don't think that there has been any change since I first stood here. The attorney letter was not in any way integral to receiving payment. So I actually, I understand it differently. I understand that had he not been able to get the SBA surety and work out that arrangement that the government could have and likely would have revoked the original contract award. Is that incorrect? No, but he did enter into the agreement. So the attorney letter was just a letter saying that this agreement we think is unlawful. But that was designed to put this last part of the contract and arrangement in place so that he didn't suffer a revocation of the award. It was already part of the contract that he entered into with the SBA. He entered into the contract with the SBA that required the third party escrow. So he entered into that contract. If the Coast Guard had disagreed with his attorney letter about where the payment should go, the payments would have just gone into the escrow account. So really, that letter remains the same. It's just an argument about why the payment should go directly to him. He didn't refuse to enter into the contract. He was in the contract. That attorney letter was just a legal opinion about why that escrow account was unnecessary. So your opponent was saying he actually was getting those payments and keeping them and not submitting them to escrow. Your position is, I understood it to be they were going to escrow and that's what he was upset about. He wanted to divert them directly to himself. He had the payments to him. The payments went to him. Okay, so the government is correct. When it says the payments went to him, yes. Okay, so he physically had the payments and therefore he needed to show why he should keep those payments. That's another way to look at it. That's the government's position, as I understood it. That does appear to be the government's position. And I don't disagree that there is an account that he was supposed to put the payments into. And that the attorney letter was generated as a result of that account. But that doesn't- And to keep the funds that he didn't put in that account. Isn't that a critical point? Well, I don't think that it's not important. The payments were for reimbursement for- Well, it doesn't matter what the payment, I get that the payments were for reimbursement for a contract he had already earned the bid on. My question is a different question. Yes. Okay, which is the letter was designed to assist him in keeping those monies with himself as opposed to putting them in an escrow account. Well, I don't know what the date was in which he entered into any sort of agreement with the SBA, including- I'm not asking about the date. My question is, do you concede that he had those funds and that the letter was designed to ensure that he could keep those funds in whatever account he had them in, instead of putting them into the escrow account? I can't say that for sure, Your Honor, and that's not me sort of dancing around the question. We do not have facts in the record about where funds were to go when. I agree that I have read some discovery, which is outside of what the district court ever looked at, about this escrow agreement, and a couple of other things that I think are important to note. This attorney was not someone who was random. This is a person that he hired, and the government is aware- I thought I read that the person was rather unhappy that his name was used in a way that he did not consent to or have knowledge of. He was, but the government makes it sound as if the attorney was not involved at all. There was an attorney- Why don't you wrap up instead of hitting on other points? Okay. Sure. Thank you, Your Honor. I guess the last thing I would share with the court is that if you agree that this is ancillary to the identity theft, the aggravated identity theft, my client is due to be released after having almost fully served his sentence August 4th of this year, according to the Bureau of Prisons website. And so I'd like the court to keep that in mind in determining this case. Thank you. Thank you, counsel. Thank you both. We'll take the case under advisement.